UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMRON INTERNATIONAL DIVING SUPPLY, INC., a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>HYDROLINX DIVING COMMUNICATION, INC., SAAD SADIK, a.k.a. TODD SADIK, a.k.a. JOHN SADIK, a.k.a. DALEA ESTEPHAN, a.k.a. STEPHEN MORALES, a.k.a. FRANK JASHUA, an individual,<br><br>Defendants. | Civil No.   11cv1890-CAB (JMA)<br><br>**ORDER DENYING DEFENDANT'S MOTION FOR RECONSIDERATION [Doc. No. 113];  GRANTING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT [Doc. No. 117]; EXTENDING TEMPORARY RESTRAINING ORDER FOR 90 DAYS;  FINAL JUDGMENT AND PERMANENT INJUNCTION** |

Before the Court is Defendant's motion for reconsideration [Doc. No. 113] and Plaintiff's motion default judgment [Doc No. 117.]  On September 7, 2012 the Court held oral argument on the motions.  Boris Zelkind, Esq. appeared on behalf of the Plaintiff. Defendant Saad Sadik ("Sadik")  appeared *in pro per*.  There were no appearances on behalf of defendant Hydrolinx Diving Communication, Inc. (hereinafter "Hydrolinx").   For the reasons set forth below, the motion for reconsideration is **DENIED** and the motion for default judgment is **GRANTED**.

## I.  BACKGROUND

This Court hereby incorporates the procedural background which is set forth in its order of May 22, 2012 denying Defendants' motion for reconsideration. [Doc. No. 102 at 2-9.] On July

1

9, 2012, this Court granted Plaintiff's motion for entry of default against Defendants Hydrolinx and Saad Sadik. [Doc. No. 109.] On July 9, 2012, the Clerk entered default as to Defendants Hydrolinx and Sadik. [Doc. No. 110.] On July 23, 2012, Defendant Sadik filed a motion for reconsideration of the Court's July 9, 2012 order. [Doc. No. 113.] On August 24, 2012, Plaintff filed an opposition to the motion for reconsideration. [Doc. No. 127.] On August 31, 2012, Defendant Sadik filed a reply to the opposition. [Doc. No. 135.]

On August 3, 2012, Plaintiff filed a motion for default judgment. [Doc. No. 117.] On August 29, 2012, Defendant Sadik filed an opposition to the motion for default judgment. [Doc. No. 130-1.] On September 4, 2012, Plaintiff filed a reply to the opposition. [Doc. No. 138.]

After reviewing the submissions and oral arguments of the parties, the Court **HEREBY DENIES** the motion for reconsideration; and **GRANTS** Plaintiff's motion for default judgment as set forth below.

II.  MOTION FOR RECONSIDERATION

A court has discretion to reconsider and vacate a prior order. *Barber v. Hawaii*, 42 F.3d 1185, 1198 (9th Cir.1994); *United States v. Nutri-cology, Inc.*, 982 F.2d 394, 396 (9th Cir.1992). A motion for reconsideration, however, should not be granted absent highly unusual circumstances, unless the district court is presented with newly discovered evidence, committed clear error, or if there is an intervening change in controlling law. *Kona Enterprises, Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir.2000). To succeed, a party must set forth facts or law of a strongly convincing nature to induce the court to reverse its prior decision. *See, e.g., Kern-Tulare Water Dist. v. City of Bakersfield*, 634 F.Supp. 656, 665 (E.D.Cal.1986), aff'd in part and rev'd in part on other grounds, 828 F.2d 514 (9th Cir.1987).  Moreover, when filing a motion for reconsideration, Local Rule 7.1 (i)(1) requires a party to show "what new or different facts or circumstances are claimed to exist which did not exist, or were not shown, upon such prior application."  Finally, any motion for reconsideration "must be filed within twenty-eight days after the entry of the ruling order or judgment sought to be reconsidered."  Local Rule 7.1 (i)(2).

Once again, defendant's motion for reconsideration merely makes unsupported assertions

2

going to the merits of the lawsuit but does not present any new evidence or law with regard to Defendant Sadik's destruction or withholding of evidence (leading to the two contempt citations) or his failure to pay the contempt sanctions.  Defendant also refers to FRCP 60(b)(3) but does not provide any evidence to show "fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party."   Therefore, Defendant Sadik's motion for reconsideration of this Court's July 9, 2012 order granting Plaintiff's motion for entry of default is **HEREBY DENIED** on the grounds that Defendant has failed to present new or different facts or circumstances to warrant reconsideration.  Defendant also failed to present sufficient evidence to warrant relief under Fed.R.Civ.P 60(b)(3).

III.  MOTION FOR DEFAULT JUDGMENT

A.  Claims and Factual Allegations.

In the complaint, Plaintiffs assert the following causes of action against Defendants Sadik and Hydrolinx:

> 1) Computer Fraud and Abuse, 18 U.S.C. § 1030(g) and 28 U.S.C. § 1331;
> (2) Trade Secret Misappropriation, Cal. Civil Code § 3426;
> (3) Breach of Contract;
> (4) Breach of Confidence;
> (5) Conversion;
> (6) Trespass to Chattels;
> (7) Fraud;
> (8) Constructive Fraud;
> (9) Interference with Prospective Business Advantage;
> (10) Unjust Enrichment;
> (11) Unfair Competition;
> (12) Statutory Unfair Competition;
> (13) Common Law Misappropriation;
> (14) Comprehensive Computer Data Access and Fraud Act;
> (15) Conspiracy.

[Doc. No. 1.]

On October 21, 2011, District Judge Huff denied the Defendants' motion to dismiss the complaint, except for the claim for conspiracy against Defendant Hydrolinx.  This Court hereby adopts and incorporates by reference the summary of the complaint's factual allegations set forth in Judge Huff's order, Doc. No. 22 at 2-7.

B.  Legal Standard.

The grant of default judgment is determined at the court's discretion. *O'Connor v. Nev.*, 27 F.3d 357, 364 (9th Cir.1994). To determine whether such discretion should be exercised, the

3

Ninth Circuit has provided seven factors for consideration before a district court grants default judgment—including: (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of dispute concerning material facts; (6) whether default was due to excusable neglect and; (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir.1986).

When assessing these factors, all factual allegations in the complaint are taken as true, except those with regard to damages. *See*, *Televideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir.1987).

1. The possibility of prejudice to the plaintiff.

Here, Plaintiff will be prejudiced without remedy because Plaintiff has no other way to prevent Defendants from continued trade secret violations.  In addition, throughout the course of this litigation, Defendants have engaged in a pattern of destruction of evidence and violation of court orders that has led to two contempt orders, monetary sanctions and, finally, the entry of default.  This behavior only reinforces Plaintiff's position that it is in need of a judgment to prevent Defendants from continued trade secret violations.

2. The merits of plaintiff's substantive claim.

The Plaintiff's motion is predicated on several claims, most of which provide a basis for the grant of default judgment.[1]

a. Trade Secret Misappropriation, Cal. Civ.Code §§ 3426 et seq.

To establish a prima facie case for trade secret misappropriation, a plaintiff must demonstrate: (1) the plaintiff owned a trade secret, (2) the defendant acquired, disclosed, or used

---

[1] As to the claim for Federal Computer Fraud and Abuse under 18 U.S.C. § 1030, the Ninth Circuit has recently, in the criminal context, limited the scope of this statute to say that it is an "anti-hacking" statute, not a misappropriation statute.  *See United States v. Nosal*, 676 F.3d 854, 860 (9th Cir.2012).  Therefore, plaintiff may only have a claim under this statute to the extent that Sadik may have accessed the computers or data after he was terminated.  However, under this Court's supplemental jurisdiction, default can still be granted as to Plaintiffs' other claims, including trade secret misappropriation (Cal. Civ. Code § 3426), unfair competition (Cal. Bus. & Prof. Code § 17200 et seq.), common law misappropriation and unfair competition, and Computer Data and Access Fraud (Cal. Pen. Code §502(c)(e)).  *See Solarbridge v. Ozkaynak*, 2012 WL 2150308 at *3 (N.D. Cal. 2012).

the plaintiff's trade secret through improper means, and (3) the defendant's actions damaged the plaintiff's business. *See*, Cal. Civ.Code § 3426.1; *Sargent Fletcher, Inc. v. Able Corp.*, 110 Cal.App.4th 1658, 1665–66 (2003); *Morlife, Inc. v. Perry*, 56 Cal.App.4th 1514, 1519 (1997).

With respect to the first element, a trade secret is defined as "a formula, pattern, compilation, program, device, method, technique, or process, that: (1) derives independent economic value ... from not being generally known to the public; and (2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy." *See, Uniform Trade Secrets Act ("UTSA")*, Cal. Civil Code § 3426(d).

Here, Plaintiff alleges that the following are trade secrets: AMRON's technical designs, schematics, diagrams, photos, and know-how, and AMRON'S vendor information, customer information, and know how.  Complaint, ¶ 50, 51.  Plaintiff also alleges that defendants gained access to Amron's confidential information in the course of the employee-employer relationship between Sadik and Amron, and that Defendants have and continue to use and disclose to third parties Amron's trade secrets without Amron's consent or permission, in attempting to develop Defendants' own competing business.  Complaint ¶¶ 52-54.  These allegations are taken as true. *Televideo Sys., Inc. v. Heidenthal*, 826 F.2d at 917–18.  In the motion for default judgment, Plaintiff provided evidence that the Defendants' actions damaged Plaintiff's business. [Declaration of Debra Ritchie ("Ritchie Decl."), §§ 4-8, 10, 14, 15; Declaration of William Garmer ("Garmer Decl.", §§ 4-9][2].  Finally, Defendants' misappropriation of Plaintiff's trade secrets was willful and malicious, entitling Plaintiff to an award of reasonable attorneys fees and costs.  Complaint ¶¶ 56 and 57; *Televideo Sys., Inc.*, 826 F.2d at 917-18.

b. Unfair Competition, Cal. Bus. & Prof Code §§ 17200 et seq.

Plaintiff also asserts that Defendant has violated California's Bus. & Prof Code § 17200. This claim covers a wide range of conduct and embraces "anything that can properly be called a business practice and that, at the same time, is forbidden by law." *Cel–Tech Comc'ns, Inc. v. L.A Cellular Tel.* 20 Cal.4th 163 (1999). In short, Section 17200 "borrows" violations from other

---

[2] Most of Defendant's opposition [Doc. No. 130] addresses the factual assertions as to liability, which are deemed admitted. *Televideo Sys., Inc.*, 826 F.2d at 917-18.  The opposition presents no compelling evidence regarding Plaintiff's damages.

11cv1890

laws by making them independently actionable as unfair competition practices. *Id*.

Section 17200 defines unfair competition as "(1) any unlawful, unfair or fraudulent business act or practice; (2) unfair, deceptive, or misleading advertising or (3) any act prohibited by Chapter 1 (commencing with Section 17500) of Part 3 of Division 7 of the Business and Professions Code." Importantly, misappropriation of trade secrets in violation of UTSA constitutes unfair competition. *See, Courtesy Temp.., Inc. v. Camacho*, 222 Cal.App.3d 1278 (1990). In that case, the plaintiff's action, under Bus. & Prof Code § 17200, sought injunctive relief based on piracy and deceit of former employees. The court held that the defendants' actions constituted misappropriation of confidential information and granted injunctive relief pursuant to Bus. & Prof Code § 17203.

Here, similarly, Defendants have engaged in unfair competition as prescribed by Section 17200. Defendants did so by "stealing of AMRON's computer information, using for Defendants' own purposes, and adversely to the interests of AMRON and its business venture, AMRON's technical and business information, destroying AMRON's technical information, and interfering with AMRON's business. . ." Complaint §120. Defendants' actions have caused damage to Plaintiff's business. Complaint ¶¶ 119-121; Ritchie Decl., §§ 4-8, 10, 14, 15; Garmer Decl.", §§ 4-9 .

Defendant's actions thus constitute unfair competition under California's Business and Professions Code § 17200. Complaint ¶¶ 119-121; *Courtesy Temp*, 222 Cal.App.3d at 1291. Further, and as a direct and proximate result of the Defendant's unfair competition in violation of the Section 17200 et seq, Plaintiff has suffered and will continue to suffer irreparable harm unless Defendant is enjoined from disclosure of further trade secrets of Plaintiff. Complaint ¶ 121; Ritchie Decl., §§ 4-8, 10, 14, 15; Garmer Decl.", §§ 4-9.  This, as discussed below, provides the basis for the grant of the permanent injunction. *Courtesy Temp. Serv*., 222 Cal.App.3d at 1292; Bus. & Prof Code § 17203.

c. Common Law Misappropriation and Unfair Competition

Under the common law, a former employer has a right to enjoin acts of unfair competition by an ex-employee in divulging or using trade secrets. *See, Empire Steam Laundry v. Lozier*, 165

11cv1890

Cal. 95, 96–102 (1913); *Greenly*, 77 Cal.App.3d 382, 391–392 (1978); *Santa Monica Ice & Cold Storage. Co. v. Rossier*, 42 Cal.App.2d 467, 468–471 (1941); *American Loan Corp. v. California Commercial Corp.*, 211 Cal.App.2d 515, 521–523 (1963).

For the reasons set forth above, Defendants also engaged in misappropriation and unfair competition under the common law. See, Complaint ¶¶ 113-116. Defendants did so by "stealing of AMRON's computer information, using for Defendants' own purposes, and adversely to the interests of AMRON and its business venture, AMRON's technical and business information, destroying AMRON's technical information, and interfering with AMRON's business. . ." Complaint ¶ 115. Defendants' actions have caused damage to Plaintiff's business. Complaint ¶¶ 119-121; Ritchie Decl., §§ 4-8, 10, 14, 15; Garmer Decl.", §§ 4-9.  As a consequence, Defendants' actions have harmed Plaintiff and constitute misappropriation and unfair competition. *Greenly*, 77 Cal.App.3d at 391–392 (1978).

d.  Computer Data Access Fraud.

Plaintiff also seeks relief under California Penal Code section 502 ("CDAF"), which states in pertinent part:

> (e)(1) In addition to any other civil remedy available, the owner or lessee of the computer, computer system, computer network, computer program, or data who suffers damage or loss by reason of a violation of any of the provisions of subdivision (c) may bring a civil action against the violator for compensatory damages and injunctive relief or other equitable relief. Compensatory damages shall include any expenditure reasonably and necessarily incurred by the owner or lessee to verify that a computer system, computer network, computer program, or data was or was not altered, damaged, or deleted by the access. For the purposes of actions authorized by this subdivision, the conduct of an unemancipated minor shall be imputed to the parent or legal guardian having control or custody of the minor, pursuant to the provisions of Section 1714.1 of the Civil Code.

Cal. Penal Code §502(e)(1).

Here, Plaintiff alleges that Defendant Sadik "knowlingly and without permission altered, damaged, deleted, destroyed, and otherwise used AMRON's data, computer, computer system, peripherals and computer network in order to devise and execute a scheme or artifice to defraud, deceive and/or extort." Complaint ¶ 129.  Moreover, there is ample evidence (set forth over the course of two contempt hearings) that Defendants destroyed computer files and other data. Plaintiff has incurred considerable expense in hiring experts to verify that the computer system and/or data has been altered or destroyed. Ritchie Decl. ¶¶ 10-12.  Therefore, Defendants have

7

violated the CDAF, causing damage to Plaintiff.

3. The sufficiency of the complaint.

Plaintiff has pled factual allegations consistent with the appropriate standard held in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (holding that a claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.") *See also, Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (holding that the complaint must plead "enough facts to state a claim for relief that is plausible on its face."). In addition, the sufficiency of the complaint was upheld (except for the conspiracy claim against defendant Hydrolinx) when Judge Huff denied the Defendants' motion to dismiss the complaint. [Doc. No. 22.]

4. Sum of money at stake.

Plaintiff is requesting approximately $2 million. Under this factor, the Court looks to the sum of money at stake between the parties. While a large sum of money may cut against the grant of default judgment, *see, Eitel* 782 F.2d at 1472, the Ninth Circuit has affirmed default judgments of $2 million, especially where the conduct of the parties has been egregious and smaller sanctions have not been heeded. *See e.g. Yusov v. Yusuf*, 892 F.2d 784 (9th Cir. 1989) (district court acted within its discretion in granting default judgment against plaintiffs on defendant's counterclaim, under egregious facts of case, for consistent and willful failure of plaintiffs and their attorney to obey court orders and follow rules of procedure, resulting in great delay, where previous sanction of $3,880 in attorney fees had been ignored). Here, Defendants have engaged in egregious behavior, as shown by two contempt citations, and monetary sanctions were unsuccessful. Therefore, this factor is satisfied.

5. The Possibility of Disputed Facts.

The allegations in the Complaint are deemed admitted. *Televideo Sys., Inc.*, 826 F.2d at 917–18. Moreover, Plaintiff submitted substantial evidence over the course of two contempt hearings that further support the Plaintiff's allegations as to the Defendants' conduct. Finally, Plaintiff has submitted admissible evidence with regard to the alleged damages, and Defendant has provided no compelling evidence to dispute the Plaintiff's damages. Therefore, there does

not appear to be a significant possibility of disputed facts.

6.  Whether Default was due to excusable neglect.

Clearly default was not due to excusable neglect, as default was due to the Defendants' repeated contempt and bad faith actions in this litigation.

7.  Policy underlying the federal rules of civil procedure favoring decision on the merits.

Although federal policy generally disfavors the entry of a default judgment, all of the other *Eitel* factors weigh in favor of default judgment. In addition, the public policy favoring disposition of cases on their merits has, in this case, been imperiled by Defendants' spoilation of evidence.  As this Court stated previously:

> Defendants have shown a complete lack of respect for the judicial process by violating numerous court orders in this case and being found in contempt – twice. In addition to destroying evidence and intentionally failing to produce evidence, Defendant Sadik continues to refuse to pay the sanctions that he was ordered to pay as of February 21, 2012.  Therefore, the Court finds that all of factors for entry of default judgment are satisfied.

[Doc. No. 109 at 3-4.]

Therefore, this factor is also satisfied and default judgment shall be entered as set forth below.

C.  Compensatory/Punitive Damages.

Plaintiff has submitted admissible evidence with regard to the following compensatory damages:

a.   $678,451.06 for lost profits through July 13, 2012 [Ritchie Decl. ¶¶ 2-7, Ex. A];

b.   $38,948.40 per month for lost profits for continuing sales from July 13, 2012 [Ritchie Decl. ¶ 8];

c.   $468,000.00 to recreate data Sadik destroyed related to Amron's HSU [Garmer Decl. ¶¶ 4-8; Ritchie Decl. ¶ 14];

d.   $158,300.80 for increased production expenses [Garmer Decl. ¶ 9; Ritchie Decl. ¶ 15; and

e.   $137,850.83 for computer fraud and abuse damages that Amron incurred to investigate Sadik's wrongful conduct [Ritchie Decl. ¶¶ 10-12].

The Court declines to award punitive damages.

D. Permanent Injunction.

Plaintiff seeks a permanent injunction against Defendants from further violations of California Civil Code §§ 3426 et seq and Business & Profession Code § 17200. As addressed earlier, section 17203 allows a plaintiff to obtain injunctive relief or other equitable relief for any person who engages in unfair competition. Here, Plaintiff has sufficiently pled facts with respect to the underlying claims. Those pleadings establish that irreparable harm will result from further unauthorized disclosures by Defendant. Accordingly, Plaintiff's request for permanent injunction is granted. See, Bus. & Prof Code § 17203; *In re High–Tech Employee Antitrust Litig.*, 2012 WL 1353057 *17.

E. Attorney's fees and Costs.

Plaintiff seeks to recover $345,970.00  in attorney fees. As asserted byPlaintiff, attorney fees are authorized under California Civil Code § 3426.4. *See, also In re Lopez*, 367 B.R. 99, 106 (9th Cir.2007). Here, the award of attorney fees is completely justifiable, as Plaintiff's counsel has had to pursue numerous motions and contempt proceedings to try to prevent Defendants from destroying evidence.  To support the relief sought, Plaintiff's counsel has filed a declaration describing the tasks they have performed in this action and the costs incurred. See Declaration of Boris Zelkind ¶¶ 2-12.  Because the amount asked for by Plaintiff appears reasonable, the sum will be granted in its entirety.

IV.  ORDER

Based on the foregoing reasons, Defendant's motion for reconsideration [Doc. No. 113] is **DENIED**; and Plaintiff's motion for default judgment, request for attorney's fees, and permanent injunction [Doc. No. 117] is **GRANTED** based on the fact that Defendants have engaged in, and are likely to engage in, acts or practices that violate (1) California's Uniform Trade Secrets Act (Cal. Civ.Code § 3426); (2) the law of unfair competition (Cal. Bus. & Prof.Code § 17200); (3) the common law of trade secret misappropriation and unfair competition; and (4) the Computer Data Access and Fraud Act (Cal. Penal Code § 502(c)(e)).

Since this order represents a final resolution of all the issues in this case, judgment will be entered in favor of the Plaintiff and the Clerk will close this file, accordingly.

**IT IS SO ORDERED** as follows:

1.    The motion of Plaintiff Amron International Diving Supply, Inc. ("Plaintiff" or "Amron") for default judgment is **GRANTED**.

2.    Defendants Hydrolinx Diving Communication, Inc. and Saad Sadik (collectively "Defendants") are in default.

3.    Plaintiff is awarded judgment against Defendants.  It is hereby ordered and adjudged that Plaintiff has and shall recover from Defendants the total sum of **$1,939,569.64**, consisting of the following:

   a.  $73,100.15 in sanctions as previously ordered by this Court [Doc. No. 109 at 4];

   b.  Compensatory damages as follows:

      1.    $678,451.06 for lost profits through July 13, 2012;

      2.    $38,948.40 per month for lost profits for continuing sales from July 13, 2012 thru September 13, 2012 (for a total of $77,896.80);

      3.    $468,000.00 to recreate data Sadik destroyed related to Amron's HSU;

      4.    $158,300.80 for increased production expenses; and

      5.    $137,850.83 for computer fraud and abuse damages that Amron incurred to investigate Sadik's wrongful conduct.

   c.    $345,970.00 for Amron's reasonable attorneys' fees.

4.    Pursuant to Federal Rule of Civil Procedure 65(d), Defendants and all of their officers, directors, shareholders, agents, servants, employees and affiliates thereof, representatives and attorneys, and all persons acting or attempting to act in concert or participation with them, whether acting directly or indirectly, in the United States or abroad, and all their agents, affiliates and distributors working on concert or active participation with any of the Defendants:

   a.    shall be permanently enjoined and restrained from making or selling air communicators, helium (or mixed gas) speech unscramblers ("HSU") and related intercom systems that incorporate Amron's designs, technology or intellectual property, including the air communicators and HSU devices marketed and sold by Hydrolinx ("Diving Communication

11cv1890

Products");

b.    shall be permanently enjoined and restrained from using Amron technical and business information, which constitutes protectable trade secrets ("Trade Secret technical and business information") or Amron's non-trade secret confidential business and technical information ("Confidential Information"), as further defined in Confidential Appendix A (which shall be filed separately under seal);

c.    shall be permanently enjoined and restrained from disclosing Amron's Trade Secret technical and business information or Confidential Information;

d.    shall be permanently enjoined and restrained from making or selling any products that incorporate or reflect Amron's Trade Secret technical information or Confidential Information;

e.    shall be permanently enjoined and restrained from using Amron's Trade Secret and proprietary customer lists to sell products;

f.    shall remove the Diving Communication Products from the market, including products that are currently sold to customers, by way of a recall provision that will take effect within two weeks of entry of entry of this Judgment;

g.    shall turn over the Diving Communication Products in their possession, custody, or control to Amron;

h.    shall be permanently enjoined and restrained from contesting the ownership rights in paragraph (8) below.

5.    The injunction described in paragraph 4 shall take effect within fourteen (14) days after entry of this Judgment.  The provisions of paragraph 4(d) and 4(e) above will remain in effect until forty seven (47) months from the date of entry of judgment.  The provisions of paragraph 4(b) and 4(c) will remain in effect until terminated by further order of this Court.

6.    Defendants and all of their officers, directors, shareholders, agents, servants, employees and affiliates thereof, representatives and attorneys, and all persons acting or attempting to act in concert or participation with them, whether acting directly or indirectly, in the United States or abroad, and all their agents, affiliates and distributors working on concert or

11cv1890

active participation with any of the defendants:

a. are hereby named constructive trustees over all documents, source code, and schematics in their possession, custody, or control related to Amron, Amron's Trade Secret technical and business information and Confidential Information, and any Diving Communication Products; and

b. shall convey all such documents, source code, and schematics in their possession, custody, or control referenced above to Amron, who will take full ownership and possession of all such documents.

7. To effectuate the constructive trust described in paragraph 6 above, Amron shall take full ownership and possession of all such documents located on the computer and computer media that were imaged according to the Temporary Restraining Order [Doc. No. 14] that are related to Amron, Amron's Trade Secret technical and business information and Confidential Information, and any Diving Communication Products.

8. Amron is hereby awarded all rights, title, and interest, including intellectual property rights thereof (including any trade secret rights, patents, and patent applications), in Defendants' Diving Communication Products, pursuant to the Employee Invention and Secrecy Agreement.

9. The temporary restraining order issued on August 23, 2012 [Doc. No. 126] is hereby extended to **November 21, 2012**.

10. This Court retains jurisdiction to monitor and enforce compliance with this judgment.

**IT IS SO ORDERED**.

DATED: September 13, 2012

_____
**CATHY ANN BENCIVENGO**
United States District Judge

13                                                                    11cv1890